**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ROGELIO MORENO REYES,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-CV-03236-TLN-ICD (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner Rogelio Moreno Reyes, an immigration detainee proceeding with appointed counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement (ICE), a component of the U.S. Department of Homeland Security (DHS). ECF No. 14. Respondents contend that he is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A) and, alternatively, 8 U.S.C. § 1225(b)(2). ECF No. 7 at 1–4, 7–8. Petitioner has now been detained for more than six months without a bond hearing. For the reasons set forth below, the undersigned recommends that the first amended petition be granted in part and that Respondents be ordered to provide Petitioner with an individualized bond hearing.

## I. BACKGROUND

### A. Facts

Petitioner is a thirty-year-old native and citizen of Mexico. ECF No. 7-1 at 5 (Ex. 1). He told immigration officers that he last entered the United States without inspection in the fall of 2022. Id. at 7. Before his arrest, he was living in Reedley, California. Id. at 6 (Ex. 1), 16 (Ex. 4).

On February 27, 2026, ICE's Fresno Fugitive Operations Team received a referral from ICE's Security Investigations Unit in Mexico City reporting that Petitioner was the subject of an active arrest warrant for homicide in Michoacán, Mexico. Id. at 6 (Ex. 1), 16 (Ex. 4). The same

day, the U.S. Marshals Service told ICE that the Federal Bureau of Investigation (FBI) had received an anonymous tip that Petitioner was living in Reedley. Id. at 16 (Ex. 4). The FBI's own queries showed that Petitioner was the subject of an open Drug Enforcement Administration (DEA) investigation into his involvement with a drug trafficking cartel, and the DEA's investigation identified him as a suspected "sicario," or hitman. Id. On April 16, 2026, agents from the DEA, the FBI, the Marshals Service, Homeland Security Investigations, and ICE executed a search warrant at Petitioner's residence, and ICE arrested him on an administrative immigration warrant. Id. at 6–7 (Ex. 1), 14 (Ex. 3), 16 (Ex. 4).

According to a memorandum of investigation dated May 1, 2026, Petitioner gave what the memorandum calls a "consensual interview" after his arrest to a DEA special agent, a deputy U.S. marshal, and a deportation officer designated as a DEA task force agent. Id. at 16 (Ex. 4). The memorandum reports that Petitioner "was open about his role in a drug trafficking cartel in Mexico"; that he described himself as a sicario "who was second in command to a specific cell within his organization"; that he "admitted his responsibility was to protect and acquire 'plazas' from other cartels by means of violence"; and that he "admitted he knew he was wanted in Mexico for an alleged murder of the leader of an opposing cartel." Id. He reportedly said that he left Mexico "due to conflict from his own organization." Id.

The Form I-213 prepared at the time of the arrest reports that Petitioner has no criminal arrests or convictions in the United States and describes him as "a foreign fugitive that is wanted for Homicide, robbery, and extortion in Mexico." Id. at 7 (Ex. 1). Respondents have also submitted a Spanish-language document from the judiciary of the State of Michoacán, dated July 17, 2023, which they describe as an arrest warrant for aggravated homicide, attempted homicide, and robbery. Id. at 2, 10–12 (Ex. 2); ECF No. 7 at 1–2. Respondents stated that they had requested an expedited translation, ECF No. 7 at 2 n.1, but no translation has been filed.

DHS served Petitioner with a Notice to Appear on April 16, 2026, placing him in removal proceedings under 8 U.S.C. § 1229a and charging him only as a noncitizen present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i). ECF No. 7-1 at 18, 20 (Ex. 5). His case was docketed in the Adelanto Immigration Court on April 20, 2026, and as of May

13, 2026, a master calendar hearing was set for June 22, 2026. ECF No. 14-2 at 3–4 (Ex. A). The parties have not advised the Court of the status of the removal proceedings since then. Petitioner remains detained at the Golden State Annex in McFarland, California. ECF No. 14-2 at 7 (Ex. B); ECF No. 18 at 4. He has never received a bond hearing. ECF No. 14 ¶¶ 33–35. Respondents' position is that he is mandatorily detained under § 1226(c)(1)(A) and, alternatively, § 1225(b)(2). ECF No. 7 at 2; ECF No. 7-1 at 3.

Petitioner's *pro se* petition states that he intends to seek asylum and cancellation of removal, that he fears harm if returned to Mexico, and that he has family in the United States, including a nine-year-old child and a pregnant wife. ECF No. 1 at 5–6.

**B. Procedural History**

Petitioner filed this action *pro se* on April 28, 2026. ECF No. 1. The next day, the Court construed the petition as including a motion for a temporary restraining order; directed Respondents to respond by May 1, 2026, and to submit Petitioner's Form I-213, any orders of release or detention, any custody determinations, warrants, or notices, and other relevant portions of his A-file; ordered that Petitioner not be transferred outside this district pending a ruling on the petition; and granted Petitioner leave to proceed *in forma pauperis*. ECF No. 6.

Respondents filed an opposition on May 1, 2026. ECF No. 7. They argue that Petitioner is subject to mandatory detention under § 1226(c)(1)(A) because his statements to federal agents show that he is inadmissible under 8 U.S.C. § 1182(a)(2)(C) as a knowing participant in illicit drug trafficking, id. at 3-4, and, alternatively, under § 1225(b)(2) because he is an "applicant for admission" who entered without inspection, id. at 7-8. They further argue that his detention, then about two weeks old, was constitutional, id. at 4-7, and that if the Court orders a bond hearing, Petitioner should bear the burden of proof, id. at 8-9. Respondents did not request a hearing. Id. at 1.

The Court then appointed counsel for Petitioner and directed counsel to file a reply by May 21, 2026. ECF Nos. 8, 9, 10. On May 20, 2026, Petitioner instead moved for leave to file an amended petition and attached the proposed amended petition, a supporting memorandum, and exhibits. ECF Nos. 12, 12-1. The Court granted leave; set May 22, 2026, as the deadline for the

amended petition and May 25, 2026, as the deadline for any further opposition; stated, at counsel's request, that it would consider the motion to amend in ruling on the amended petition; and advised that, absent further briefing, it would presume that Respondents rested on the record they had submitted. ECF No. 13. Petitioner filed the operative first amended petition, with a supporting memorandum, exhibits, and a proposed order, on May 26, 2026. ECF Nos. 14, 14-1, 14-2, 14-3. The amended petition asserts five claims: (I) that § 1226(a), not § 1225(b)(2), governs Petitioner's detention unless a valid mandatory detention provision applies; (II) that Respondents have not established that § 1226(c)(1)(A) applies; (III) that Respondents may not rely on 8 U.S.C. § 1226(c)(1)(E), which they did not invoke and have not established; (IV) that no-bond detention without threshold or individualized custody review violates due process; and (V) that Petitioner is entitled to declaratory and injunctive relief. ECF No. 14 at 14-18. Petitioner seeks release or, alternatively, a custody hearing within seven days at which the government bears the burden of proving by clear and convincing evidence that he is a danger or a flight risk, along with related relief. Id. at 18–19. Respondents did not file a further response.

On September 17, 2026, Petitioner filed a notice of supplemental authority advising the Court of the Ninth Circuit's decision in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026), and requesting prompt adjudication. ECF No. 18. On September 10, 2026, following the retirement of the previously assigned magistrate judge, the case was reassigned to the undersigned. ECF No. 17. On October 16, 2026, the District Judge referred the matter to the undersigned for further proceedings under 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. ECF No. 19.

**II. LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (plurality opinion) (citing U.S. Const. art. I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001).

## III. DISCUSSION

### A. Detention Authority

1. Section 1225(b)(2)

Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(2) because he entered without inspection and is therefore an "applicant for admission." ECF No. 7 at 7–8 (relying on Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026)). When Respondents filed their opposition, the question was pending before the Ninth Circuit. Id. at 7 n.3. The Ninth Circuit has since resolved it, holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez, 183 F.4th at 1165; see also Tarawally v. Chestnut, No. 1:26-cv-00619-TLN-CSK, ECF No. 14 at 3 (E.D. Cal. Sept. 8, 2026) (applying Rodriguez Vazquez to reject the same argument), findings and recommendations adopted, ECF No. 15 (E.D. Cal. Sept. 22, 2026). Respondents' out-of-circuit authorities do not bind this Court; Rodriguez Vazquez does, and Respondents have offered no basis for distinguishing it. Petitioner was apprehended at his home in Reedley more than three years after his reported entry and was placed in removal proceedings under § 1229a. ECF No. 7-1 at 6–7, 16, 18. He is therefore not subject to mandatory detention under § 1225(b)(2).[1]

2. Section 1226(c)(1)(A)

Respondents' principal argument is that Petitioner is subject to mandatory detention under § 1226(c)(1)(A), which requires the detention of any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2)." 8 U.S.C. § 1226(c)(1)(A); ECF No. 7 at 3–4. The ground on which Respondents rely, § 1182(a)(2)(C)(i), renders inadmissible any noncitizen who "the consular officer or the Attorney General knows or has reason to believe .

[1] On October 1, 2026, the Supreme Court granted certiorari to decide whether § 1225(b)(2)(A) mandates the detention of noncitizens who are present in the United States without having been admitted. Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026), cert. granted sub nom. Rhoney v. Barbosa da Cunha, No. 26-104 (U.S. Oct. 1, 2026). Unless and until the Supreme Court holds otherwise, Rodriguez Vazquez binds this Court. See Yong v. INS, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000).

. . is or has been an illicit trafficker in any controlled substance . . . , or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so." 8 U.S.C. § 1182(a)(2)(C)(i). Respondents contend that Petitioner's statements during his post-arrest interview bring him within that provision. ECF No. 7 at 3–4 (citing ECF No. 7-1 at 2, 16).

Petitioner raises two objections. The first is that § 1182(a)(2)(C) asks only whether the government "knows or has reason to believe" that a person has engaged in trafficking, and Petitioner argues that such a suspicion-based ground does not render a noncitizen inadmissible "by reason of having committed any offense" within the meaning of § 1226(c)(1)(A). ECF No. 14-1 at 6–7; ECF No. 14 ¶ 89. The second is that Respondents rely on contested law-enforcement allegations summarized in an investigative memorandum, not on a conviction, a sustained charge of inadmissibility, or a neutral threshold custody determination. ECF No. 14-1 at 7; ECF No. 14 ¶¶ 39–46. Petitioner does not contend that DHS was required to charge § 1182(a)(2)(C) in the Notice to Appear before relying on it for custody purposes. ECF No. 14 ¶ 38; see Matter of Kotliar, 24 I. & N. Dec. 124, 125 (BIA 2007) (holding that a noncitizen need not be charged with the ground on which mandatory detention under § 1226(c) rests). Respondents, who received these arguments with Petitioner's motion to amend and were given an opportunity to respond, ECF Nos. 12, 13, have not addressed either one.

Both questions are substantial. Petitioner's textual argument has some force: § 1226(c)(1)(A) speaks of inadmissibility "by reason of having committed" an offense, while § 1182(a)(2)(C) does not require a finding that the noncitizen committed a trafficking offense, only that the government knows or has reason to believe that he is or has been a trafficker. On the other hand, § 1182(a)(2)(C) appears among the "[c]riminal and related grounds" of inadmissibility, the conduct it describes is itself criminal, and its "reason to believe" language can be read as setting the standard by which that ground is established rather than as removing it from the category of "offense[s] covered in section 1182(a)(2)." The parties have not identified any decision of the Ninth Circuit or the Board of Immigration Appeals resolving the question, and Respondents' opposition assumes the answer without analysis. ECF No. 7 at 3–4.

The evidentiary question is also unsettled on this record. The reason-to-believe standard requires "reasonable, substantial, and probative evidence," Alarcon-Serrano v. INS, 220 F.3d 1116, 1119 (9th Cir. 2000), and statements made by Petitioner himself, if he made them, could well satisfy it. Petitioner has not submitted a declaration denying that he made the statements attributed to him; the amended petition is verified only by counsel, based on counsel's review of the record. ECF No. 14 at 20. But the only evidence of those statements is an unsworn summary prepared about two weeks after the interview, on the day Respondents filed their opposition, and no neutral decisionmaker has evaluated it. ECF No. 7-1 at 16.

The undersigned need not resolve these questions because Petitioner is entitled to relief even assuming that he is properly detained under § 1226(c)(1)(A). Nor must Petitioner first present his claim to an immigration judge at a hearing under Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). A Joseph hearing addresses only whether a detainee is "properly included" within a mandatory detention category. See id. at 805–06; 8 C.F.R. § 1003.19(h)(2)(ii). The immigration courts do not adjudicate constitutional challenges. Respondents note that a Joseph hearing is available, ECF No. 7 at 3, but they do not argue that Petitioner's failure to request one bars relief. In any event, the exhaustion requirement in this context is prudential, see Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007); Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017), and it may be waived where "administrative remedies are inadequate or not efficacious" or "pursuit of administrative remedies would be a futile gesture." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). Both conditions are met as to Petitioner's due process claim, because Respondents' position is that no immigration judge may consider his release at all. Cf. Li v. Warden, No. 1:26-cv-03405-DAD-CKD (HC), ECF No. 12 (E.D. Cal. July 14, 2026) (dismissing for failure to exhaust where the respondent conceded that the petitioner, detained under § 1226(a), could seek custody redetermination before an immigration judge). Petitioner's broader futility argument, that a Joseph hearing could not provide complete relief while Respondents also asserted § 1225(b)(2), ECF No. 14-1 at 9–10; ECF No. 14-2 at 12–13 (Ex. C ¶¶ 28–30), has lost much of its force after Rodriguez Vazquez, but it bears only on the statutory claims that the undersigned does not reach. The undersigned therefore declines to require

exhaustion of the due process claim.

**B. Due Process**

1. Legal Framework

In Demore v. Kim, the Supreme Court rejected a facial challenge to § 1226(c), holding that Congress may require the detention of certain criminal noncitizens "for the brief period necessary for their removal proceedings." 538 U.S. 510, 513, 531 (2003). The Court's holding rested on its understanding that detention under § 1226(c) lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. Justice Kennedy explained that a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). In Jennings v. Rodriguez, the Court held that § 1226(c) itself does not impose a time limit on detention or require periodic bond hearings, but it remanded the detainees' constitutional claims without resolving them. 583 U.S. 281, 303–06, 312 (2018). And the Court has since confirmed that its reading of § 1226(c) "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Nielsen v. Preap, 586 U.S. 392, 420 (2019).

The Ninth Circuit has not decided what test governs an as-applied challenge to prolonged detention under § 1226(c).[2] In the related context of detention under § 1226(a), the court applied the three-factor balancing test of Mathews v. Eldridge, 424 U.S. 319 (1976), emphasizing that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). Many courts in this district apply Mathews to prolonged detention under § 1226(c), considering, as part of the first factor, the total length of detention to date, the likely

[2] The Solicitor General has asked the Supreme Court to decide whether detention under § 1226(c) can become unreasonably prolonged such that due process requires a bond hearing and, if so, whether the government must justify continued detention by clear and convincing evidence. Petition for a Writ of Certiorari Before Judgment, Genalo v. D.C., No. 26-379 (U.S. Sept. 21, 2026). The petition remains pending. Given Petitioner's ongoing detention, the undersigned does not recommend holding this case in abeyance. Cf. Paramjit S., ECF No. 10.

duration of future detention, and any delays in the removal proceedings. See, e.g., Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022); Gomes de Souza v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-01479-DJC-SCR, ECF No. 13 (E.D. Cal. Apr. 17, 2026), findings and recommendations adopted, ECF No. 14 (E.D. Cal. Apr. 28, 2026); Okoro v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-03373-TLN-SCR, ECF No. 8 (E.D. Cal. June 2, 2026), findings and recommendations adopted, ECF No. 10 (E.D. Cal. June 11, 2026); Lopez Orellana v. Warden, Cal. City Det. Facility, No. 1:26-cv-01900-TLN-EFB (HC), ECF No. 13 (E.D. Cal. July 6, 2026), findings and recommendations adopted, ECF No. 16 (E.D. Cal. July 17, 2026). Respondents acknowledge that courts have applied a variety of tests, including Mathews, ECF No. 7 at 6, but they also rely on a decision concluding that due process does not require bond hearings for noncitizens detained under § 1226(c), "even for prolonged periods." Id. at 5 (quoting Keo v. Warden of the Mesa Verde ICE Processing Ctr., No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *7 (E.D. Cal. Apr. 7, 2025)). The undersigned finds the Mathews approach more consistent with Demore, which upheld mandatory detention on the premise that it would be brief, and with the Supreme Court's express preservation of as-applied challenges.

Petitioner frames his due process claim around the absence of any neutral threshold or individualized custody review, not the length of his detention alone. ECF No. 14 ¶¶ 103–11; ECF No. 14-1 at 10–11. Respondents, for their part, treated the claim as an as-applied challenge to the length of detention and argued that two weeks of detention was "hardly prolonged." ECF No. 7 at 6. Both framings call for the same inquiry. Under Mathews, the absence of any individualized hearing bears on the risk of an erroneous deprivation, and the length of detention without one bears on the weight of the private interest. And the premise of Respondents' argument no longer holds: Petitioner has now been detained for more than six months. Respondents also note that his detention will end when his removal proceedings conclude. ECF No. 7 at 6–7 (citing Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008)). But the question Demore poses is how long detention without a hearing has lasted and is likely to last. See 538 U.S. at 529–30.

2. Application of the Mathews Factors

Under Mathews, the Court weighs (1) "the private interest that will be affected by the

official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Petitioner's interest in freedom from physical detention is the most elemental of liberty interests. Zadvydas, 533 U.S. at 690. He has been detained since April 16, 2026, without any individualized review, a period that already exceeds the roughly five-month outer range on which Demore relied. See 538 U.S. at 530. By the time the District Judge rules on these findings and recommendations, his detention will likely have lasted about seven months. It is also likely to continue for a substantial additional period. His removal proceedings remain pending without a final order, ECF No. 14-2 at 3–4 (Ex. A); he has stated that he intends to seek asylum and cancellation of removal, ECF No. 1 at 5; and any decision by the immigration judge will be subject to appeal to the Board of Immigration Appeals and potentially to a petition for review in the Ninth Circuit. Nothing in the record indicates that Petitioner has caused delay in his removal proceedings. Petitioner also states that his detention separates him from his family. ECF No. 1 at 5–6. Six months is near the lower end of the range in which courts in this district have found detention without a hearing unreasonable. Compare Gomes de Souza, ECF No. 13 (just over six months), with Okoro, ECF No. 8 (nearly one year), and Lopez Orellana, ECF No. 13 (more than fifteen months). But on this record, this factor weighs in Petitioner's favor.

No hearing has assessed whether Petitioner's continued detention is necessary to prevent flight or to protect the community. His detention rests entirely on DHS's categorical classification, which in turn rests on an unsworn summary of a post-arrest interview and a foreign document that has not been translated. ECF No. 7-1 at 10–12, 16. The allegations against Petitioner are grave, and if credited they may weigh heavily against release. But deciding what weight they deserve, including how reliable the statements attributed to Petitioner are and what the Mexican proceedings show, is the kind of fact-specific determination that an immigration judge is equipped to make, with the benefit of evidence and argument from both sides. Absent any hearing, the risk of an erroneous deprivation of liberty is substantial, and the probable value

of a hearing is high. This factor favors Petitioner.

The government has a legitimate and weighty interest in ensuring that noncitizens appear for their removal proceedings and in protecting the public from danger. Demore, 538 U.S. at 515, 528; Rodriguez Diaz, 53 F.4th at 1208. That interest is at its strongest here, where Respondents present evidence that Petitioner is wanted in Mexico for homicide and described himself to federal agents as a cartel enforcer. ECF No. 7 at 7; ECF No. 7-1 at 16. But a bond hearing does not undermine that interest, which lies in detaining noncitizens who pose a danger or a flight risk. An immigration judge remains free to deny bond if the government makes the required showing, and on the record Respondents describe, the government may well be able to make it. Custody hearings in immigration court are routine, and the administrative burden of providing one is minimal. This factor, while significant, does not outweigh the first two.

On balance, the undersigned finds that Petitioner's detention since April 2026 without any individualized hearing has become unreasonably prolonged, and that due process requires that he receive a bond hearing before an immigration judge.

**C. Procedures at the Bond Hearing**

Respondents argue that, if the Court orders a bond hearing, Petitioner should bear the burden of showing that he is not a danger or a flight risk, citing Rodriguez Diaz. ECF No. 7 at 8–9. Rodriguez Diaz, however, addressed a noncitizen detained under § 1226(a) who had already received a bond hearing before an immigration judge and had access to further review; the court held that those existing procedures satisfied due process. 53 F.4th at 1209–13. Petitioner, by contrast, has received no hearing at all. Where a noncitizen has been subjected to prolonged detention without any individualized review, courts in this district continue to require the government to justify continued detention by clear and convincing evidence. See Singh v. Holder, 638 F.3d 1196, 1203–04 (9th Cir. 2011) (holding that, given the substantial liberty interest at stake, the government must prove by clear and convincing evidence that a noncitizen is a flight risk or a danger to the community to justify prolonged detention); Okoro, ECF No. 8; Gomes de Souza, ECF No. 13. The undersigned agrees that this standard is appropriate. In setting any bond, the immigration judge should also consider Petitioner's financial circumstances and alternative

conditions of release. See Hernandez, 872 F.3d at 990–91. If the government does not carry its burden, Petitioner should be released on appropriate conditions of supervision. See Lopez Orellana, ECF No. 16.

Because the Due Process Clause requires the hearing, Respondents' position that Petitioner falls within § 1226(c)(1)(A) is not a basis for the immigration judge to decline to hold the hearing or to reach the merits of continued detention. Respondents also contend that the only appropriate relief is a bond hearing rather than release. ECF No. 7 at 8. The undersigned agrees. Petitioner's request for immediate release should be denied; the appropriate remedy for the due process violation identified above is a constitutionally adequate bond hearing.

**D. Remaining Claims and Requests**

In light of this recommendation, the undersigned declines to reach Petitioner's remaining statutory claims, including his contentions that Respondents have not established mandatory detention under § 1226(c)(1)(A) or § 1226(c)(1)(E) and that his detention is therefore governed by § 1226(a). ECF No. 14 ¶¶ 87–101. Those claims should be denied without prejudice. The amended petition should be granted only to the extent it seeks a declaration that Petitioner's detention is governed by § 1226, not § 1225(b)(2). See Rodriguez Vazquez, 183 F.4th at 1165.

Petitioner also asks the Court to order that any release following the bond hearing not be stayed by DHS's invocation of the automatic stay provision, see 8 C.F.R. § 1003.19(i)(2), and that Respondents be barred from re-detaining him on the same custody classification absent materially changed circumstances. ECF No. 14 at 19; ECF No. 14-2 at 14 (Ex. C ¶¶ 42–43). These requests are premature. No immigration judge has ordered Petitioner's release, DHS has not invoked the automatic stay, and the recommended relief does not itself release Petitioner. They should be denied without prejudice to renewal if circumstances warrant. The status report below will permit the Court to monitor compliance.

Petitioner's construed motion for a temporary restraining order, ECF Nos. 1, 6, and the request for preliminary injunctive relief incorporated in the amended petition, ECF No. 14-1 at 11–12, should be denied as moot considering the recommended disposition of the merits. The Court's order that Petitioner not be transferred outside this district pending a ruling on the

petition, ECF Nos. 6, 13, remains in effect. Petitioner's request for prompt adjudication, ECF No. 18, is addressed by these findings and recommendations, and his alternative requests for supplemental briefing or a status conference are moot. Any request for fees and costs under the Equal Access to Justice Act may be raised by timely application following entry of judgment. See 28 U.S.C. § 2412(d)(1)(B).

Based on the foregoing, the undersigned RECOMMENDS that:

1. The first amended petition for writ of habeas corpus, ECF No. 14, be GRANTED IN PART as to:
    a. To the extent it seeks a declaration that Petitioner's detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225(b)(2); and
    b. Petitioner's claim that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment;
2. The Court DECLARES that Petitioner's detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225(b)(2);
3. Within **fourteen (14) days** of any order adopting these findings and recommendations, Respondents be ORDERED to provide Petitioner with an individualized bond hearing before an immigration judge, notwithstanding Respondents' contention that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), at which the government shall bear the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, and at which the immigration judge shall consider Petitioner's ability to pay and alternative conditions of release; and that, if the government does not carry its burden, Petitioner be released on appropriate conditions of supervision;
4. Respondents be ORDERED to file a status report within **seven (7) days** after the bond hearing advising the Court of its outcome or, if Petitioner is no longer in Respondents' custody, to file a notice so stating within **seven (7) days** of any order adopting these findings and recommendations;
5. Petitioner's request for immediate release be DENIED;

6. Petitioner's construed motion for a temporary restraining order, ECF No. 1, and incorporated request for preliminary injunctive relief, ECF No. 14, be DENIED as moot; and
7. The first amended petition be otherwise DENIED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 22, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE